IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KATRINA LEMLEY-VUSIRIKAPALLI, )
                                                        )
        **Plaintiff,**                           )
                                                        )
vs.                                                      )    Case No. CIV-13-45-R
                                                        )
CAROLYN W. COLVIN,[1] acting    )
Commissioner Social Security        )
Administration,                      )
                                                        )
        **Defendant.**                   )

## REPORT AND RECOMMENDATION

Katrina Lemley-Vusirikapalli (Plaintiff) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Acting Commissioner's (Commissioner) final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. United States District Court Judge David L. Russell referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C), and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

I.   **Administrative proceedings.**

In documents supporting her October 2010 applications, Plaintiff alleged disability since July 26, 2010, claiming she suffered from bipolar disorder, personality disorder, carpal tunnel and hand conditions that resulted in surgery, and tennis elbow. AR 211. During an administrative review hearing following the initial denial of Plaintiff's claims, an Administrative Law Judge (ALJ) heard testimony from Plaintiff – represented by Miles Mitzner, an attorney, at the hearing and here on judicial review – and a vocational expert. *Id.* at 42-61. That ALJ subsequently determined Plaintiff was severely impaired by "Bi-polar disorder, personality disorder, carpal tunnel syndrome with surgery on both hands, and tennis elbow . . . ." *Id.* at 22. Though he found Plaintiff could not perform her past relevant work because of functional limitations resulting from these impairments, the ALJ concluded Plaintiff could perform other substantial gainful activity, and, as a result, was not disabled. *Id.* at 36, 37. The Appeals Council of the Social Security Administration denied Plaintiff's request for review, *id.* at 1-3, and Plaintiff ultimately sought review of the Commissioner's final decision in this Court. Doc. 1.

II.   **Determination of disability.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512; 416.912. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

III. **Analysis.**

    A. **Standard of review.**

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

3

conclusion." *Id.* (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

**B.  Plaintiff's claims of error.**

Plaintiff brings four claims of error: (1) the ALJ relied on nonexistent medical evidence in reaching his decision;[2] (2) the ALJ failed to properly analyze Plaintiff's credibility; (3) the ALJ erred in finding Plaintiff had only a moderate limitation in her social functioning; and (4) the ALJ failed to include Plaintiff's physical impairments in his assessment of her residual functional capacity (RFC).[3]  Doc. 11, at 2-12.

**1.  The medical evidence of record.**

**a.  Evidence of physical impairment.**

At the outset, it is necessary to address what Plaintiff is actually challenging through her first claim of error. *Id.* at 3-6. She labels the claim as "treating physician error," *id.* at 3, but the only doctor she refers to in her argument on the claim is Dr. Metcalf. *Id.* at 4. The record shows that Dr.

---

[2]  Plaintiff raises this claim of error under the heading, "The Treating Physician Error." Doc. 12, at 3-6.

[3]  Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

Metcalf examined Plaintiff's hands, wrists, arms, and elbows for purposes of providing a workers' compensation evaluation in June 2008, some two years before Plaintiff's July 2010 onset of disability. AR 256-58. Plaintiff does not explain how performing this one-time consultative examination somehow elevated Dr. Metcalf to the status of a treating physician whose opinions, when properly supported, command controlling weight. Doc. 12, at 6; *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Perhaps Plaintiff intended to differentiate between Dr. Metcalf and the *non-examining* State agency medical consultants including Charles Clayton, M.D., and Luther Woodcock, M.D., who reviewed the medical evidence in this case and opined on the severity of Plaintiff's physical impairments. AR 342, 343.

These State consultants arrived at their opinions after reviewing Dr. Metcalf's report as well as the report of Dennis Brennan, D.O., who, like Dr. Metcalf, examined Plaintiff, but did so in December 2010 at the request of the Social Security Administration.[4] *Id.* at 311-17. Based on their reviews of the reports of the two examining doctors, the State agency medical experts reported:

> 37 yo [claimant] with allegations of a Bipolar disorder with CTS with previous surgery and tennis elbow.

---

[4] In her reply brief, Plaintiff identifies Drs. Metcalf and Brennan as her treating physicians. Doc. 14, at 6. This is not correct. These physicians saw and examined Plaintiff only one time – they did not treat her within the meaning of the regulations. *See* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(d)(1), (2).

5

> Dr. letter from Dr. Metcalf 6/12/08, mentions 12/18/07 CTS release surgery physical exam of the R hand revealed positive Tinel's sign, median nerve compression test and Phalen's test. There was some tenderness to palpation of the radiocarpal joint and the central carpal joints of the wrist with decrease[d] sensation of the little finger. L hand was positive for T[i]nel's sign, median nerve compression test and Phalen's test. Also tenderness to palpation of the radiocarpal joint/central joints of the wrist with decrease[d] sensation in thumb. Bilateral elbows had normal ROM with tenderness to palpation of the medial epicondyle and biceps tendon and antecubital fossa. Bilat elbow Tinel sign negative.
>
> ICE performed [by Dr. Brennan on] 12/8/10 stated vitals: HT:63.5, WT: 152.6lbs, BP: 121/81. Focus exam showed normal ROM of shoulders, elbows, wrists and hands, hips, knees, and ankles. [Claimant] has a well healed surgical cicatrix on palmar surface of both hands. [Claimant] had negative Tinel's/Phalen's sign bilaterally with grip strength 4/5 and symmetrical bilaterally. Radial pulses satisfactory bilaterally. Cranial nerves intact, DTR's 2+ and symmetrical. [Claimant] had normal hand skills with finger to thumb opposition adequate and fine tactile manipulation normal.
>
> It is determined that [claimant's] physical allegations are non-severe.

AR 342, 343.

The ALJ summarized the reports of both examining consultants, *id.* at 23, and both non-examining State agency experts, *id.* at 24-25, and concluded that Plaintiff was severely impaired by "carpal tunnel syndrome with surgery on both hands, and tennis elbow . . . ." *Id.* at 22. Then, after assessing Plaintiff's credibility, the ALJ limited her to light work, finding she was "able to work with her fingers picking, pinching and otherwise work with her hands." *Id.* at 28.

6

Thus, the ALJ weighed the conflicting evidence[5] and determined that Plaintiff's physical impairments *were* severe and that they functionally limit her ability to perform any work exceeding the light exertional level.

Plaintiff, apart from making the erroneous, unsupported claim that Dr. Metcalf was a treating physician, Doc. 12, at 3, 6, then implicitly challenges the ALJ's RFC for light work by inviting the court to question Dr. Clayton's case analysis, AR 342, first, because "[t]his one page document is not even evidence, it's only one page." Doc. 12, at 4. She continues, claiming the physician's analysis only "recites other, *real* physician's, notes and then simply finds 'physical allegations are non-severe.' (TR 342) That finding is nothing more than a cruel joke when one reads the second paragraph of the document which contains Dr. Metcalf's notes." Doc. 12, at 4 (emphasis added). In this vein, Plaintiff contends in her reply brief "that the ALJ's RFC was corrupted because

---

[5] Dr. Metcalf found Plaintiff had a 30% permanent impairment to each hand and a 20% impairment to each arm. AR 256-58. Consequently, as the ALJ found, Dr. Metcalf concluded Plaintiff had "sustained an anatomical alteration that was permanent." *Id.* at 23, 258.

In contrast, Dr. Brennan – on examination several years after Plaintiff's carpal tunnel and trigger thumb release procedures – found that she had "normal [range of motion] of the shoulders, elbows, wrists and hands as noted on the [range of motion] flow sheet." *Id.* at 312. And, as the ALJ noted, Dr. Brennan further found that Plaintiff "had normal hand skills, finger to thumb opposition was adequate, [and] fine tactile manipulation of objects was normal . . . ." *Id.* at 23.

7

[Plaintiff's] hands carry a 30% impairment from her treating physicians . . . [t]he ALJ also failed to identify any argument as to why such *uncontradicted* evidence wasn't reliable, another violation of the treating physician rule." Doc. 14, at 6-7 (emphasis added).

Dr. Metcalf's evidence,[6] of course, was not "uncontradicted," *id.* at 6, and Plaintiff offers no rationale challenging the correctness of the ALJ's consideration of the conflicting evidence provided by Dr. Brennan, AR 311-17, the other examining physician. Doc. 12, at 3-6. Instead, she simply ignores both Dr. Brennan and his opinions in her briefing on this claim of error. Similarly, Plaintiff dismisses the contradictory evidence of record from the State medical experts, Drs. Clayton and Woodcock, concluding their opinions are "nothing; certainly not substantial evidence to support the ALJ opinion." *Id.* at 5. As support, in addition to arguing that the written case analyses of the non-examining physicians are not actually evidence because they are only one page long, *id.* at 4, Plaintiff maintains these opinions are "suspect" under Tenth Circuit law. *Id.* at 6. To the contrary, with regard to the opinions of State agency experts, Social Security regulations provide that

---

[6] Plaintiff testified that Dr. Metcalf imposed an eight-pound lifting restriction. AR 47. This claim is not supported by the doctor's report. *Id.* at 256-58.

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence
> . . . .

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

Plaintiff has failed to establish error by the ALJ in his consideration of the evidence relating to Plaintiff's physical impairments and functional limitations.

### b. Evidence of mental impairment.

Consistent with her physical impairment arguments, and despite having identified her claim as "treating physician error," Doc. 12, at 3, Plaintiff, once again, neither identifies a treating mental health physician nor any opinion authored by such a physician that she claims was improperly considered by the ALJ. *Id.* at 3-6. The closest she comes is in connection with her third claim of error where, with regard to her social functioning, she states that "[h]er treating doctor said this was a severe area. (TR 277)" *Id.* at 9. Nonetheless, there is no indication on the referenced page, AR 277, or in the document as a whole that any physician, treating or otherwise, was responsible for the assessment. *Id.* at 275-87.

9

Rather than actually asserting error by the ALJ as to the opinions of a treating physician, Plaintiff instead points to Exhibit 5F, *id.* at 324-27, a Mental Residual Functional Capacity Assessment. Doc. 12, at 4. She correctly notes that the document is neither signed nor dated and argues, "It is not evidence, and certainly not substantial evidence. It could have been completed by anyone. In any form of measure it is not 'medical' evidence. It is without foundation or author." *Id.* She repeats these same arguments in connection with Exhibit 6F, AR 328-41, a Psychiatric Review Technique. *Id.* She then challenges Exhibit 10F, *id.* at 363, and Exhibit 11F, *id.* at 364, both signed by non-examining State agency psychologists, confirming their agreement with the unsigned, undated assessments. Doc. 12, at 5. Plaintiff concludes, "So that's it. There is no more evidence to support the ALJ decision." *Id.*

In response, the Commission appended a "tracking sheet" as Attachment A to her brief in an effort to match the unsigned, undated assessments with the subsequent statements from the State agency psychologists. Doc. 13, at 4. Because the Commissioner's attachment is not a part of the record on review, the undersigned has not considered it.[7]

Nonetheless, Plaintiff, through counsel, had the opportunity to object to

---

[7] The undersigned notes that the record contains case development sheets which reflect the links between the various exhibits. AR 64, 70.

the admission of Exhibits 5F and 6F into the record and she failed to do so. AR 45. The objections she now voices could, and should, have been raised by counsel at that time. Moreover, when Plaintiff argues that there is no evidence of record to support the ALJ's assessment of her mental impairments and resulting functional limitations because of anomalies in various exhibits, she ignores, once again, the findings of a consultative examiner in this case, this time the findings made by R. Keith Green, Ph.D. *Id*. at 321-23. The ALJ summarized Dr. Green's findings as follows:

> R. Keith Green, Ph.D., conducted a consultative Mental Status Examination on January 7, 2011 (Exhibit 4F). The claimant present with complaints of auditory hallucinations, orthopedic problems and anxiety. Her concentration and numerical reason was adequate although attention and past were impaired. She demonstrated the ability to retain and carry out simple, detailed and more complex situations. Her social relationships appeared to fall within normal limits except that she avoids heterosexual relationships. The claimant's activities of daily living also appeared to fall within normal limits. The doctor said that one would estimate the severity of impairment of functional psychological capacity for work to be mild to moderate. She can handle her own funds. Dr. Green found the claimant had Psychotic Disorder, Not otherwise specified, generalized anxiety disorder and Dysthymic disorder, personality disorder (with avoidant and borderline features[)]. Her prognosis was found to be poor. The claimant feels she was deteriorating psychologically and seems committed to biomedical explanations of her problems in living with no insight as to psychosocial precipitants.

*Id.* at 24.

This evidence from Dr. Green supports the ALJ's findings consistent with

the requirements of 20 C.F.R. §§ 404.1520a(c), (e)(4); 416.920a(c), (e)(4), AR 26-28, as well as his assessment of Plaintiff's retained ability "to sustain concentration necessary for unskilled work," *id.* at 28, despite her mental impairments. Plaintiff has raised no objection to the ALJ's consideration of Dr. Green's analysis in either her opening brief or in reply to the Commissioner's argument regarding this evidence. She has failed to establish error by the ALJ in his consideration of the evidence relating to her mental impairments and functional limitations.

### 2. Plaintiff's credibility.

Plaintiff maintains the ALJ "briefly summarized the medical evidence (including the testimony of the claimant), but did not affirmatively link any of the factors to specific evidence." Doc. 12, at 6. In this regard, an ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "decide whether he believe[d] them]." *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted). In making this determination, an ALJ should consider factors such as the following:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted). Likewise, an ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Contrary to Plaintiff's assertion, the ALJ plainly provided the requisite linkage in this case. *See* AR 29, 35.

Next, Plaintiff points to the ALJ's finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 35; *see* Doc. 12, at 7. She maintains that it evidences "an improper approach to credibility." Doc. 12, at 7. Relying on the Seventh Circuit's decision in *Bjornson v. Astrue,* 671 F.3d 640, 644-45 (7th Cir. 2012), Plaintiff contends that

> [t]he problem with the ALJ's analysis of the claimant's credibility (apart from vagueness) is that she should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the guidelines *and only then* formulated an appropriate RFC, not the other way around, *i. e.,* the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC.

*Id.* (footnote omitted).

The ALJ's decision reflects otherwise. In proceeding through the sequential process, the ALJ set out his RFC finding – a finding reached "[a]fter

13

careful consideration of the entire record," AR 28 – and then detailed how he had arrived at such an assessment, specifically stating that "[i]n making this finding" he had considered Plaintiff's symptoms. *Id.* The ALJ noted he was required to evaluate whether Plaintiff had shown by objective medical evidence that she suffered from a pain-producing impairment and, if so, whether such an impairment could reasonably be expected to produce Plaintiff's pain and, if so, whether Plaintiff's pain was disabling in the light of the *entire* record. *Id.*; *see also Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987). To this end, the ALJ thoroughly summarized Plaintiff's testimony with regard to her subjective complaints, AR 26, and then determined that Plaintiff's complaints regarding the extent of her symptoms were not fully credible, *id.* at 35, a determination that was linked to evidence in the record. *Id.* at 29, 35. Notwithstanding the ALJ's use of language suggesting that the RFC had been formulated before Plaintiff's credibility was assessed, *id.* at 35, his decision plainly reflects that the opposite occurred.

Finally, Plaintiff suggests the ALJ's credibility assessment is somehow faulty because (1) she is in so much pain she attempted suicide, (2) she has consistently received Global Assessment of Functioning (GAF) scores of 50 and "[s]uch consistency reflects an inability to sustain employment," and (3) the vocational expert "made a big deal" out of the fact that Plaintiff had held

14

numerous jobs. Doc. 12, at 8. Simply put, Plaintiff's arguments do not undercut the ALJ's credibility determination because (1) Plaintiff's reported suicide attempt was in 2004, some six years before her alleged onset of disability date and does not reflect on the believability of her current subjective complaints, AR 267; (2) Plaintiff fails to direct the court to specific GAF scores with findings suggesting error in the ALJ's evaluation of her subjective complaints, Doc. 12, at 8; and (3) the vocational expert merely stated that Plaintiff had approximately forty job entries and asked the ALJ if he should list them, and declined to speculate on a possible reason that an individual could have had this number of jobs. AR 57, 59-60.

Plaintiff's claims of error with regard to the ALJ's assessment of her credibility are unavailing.

### 3. Plaintiff's social functioning limitation.

As has been previously reported, *supra* § III.B.1.b, Plaintiff argues that with regard to the ALJ's finding that she has a moderate limitation in social functioning, AR 26-27, "[h]er treating doctor said this was a severe area. (TR 277)" Doc. 12, at 9. But, there is no indication on the referenced page, AR 277, or in the document as a whole, *id.* at 275-87, that any physician, treating or otherwise, was responsible for the assessment. Moreover, Plaintiff has cited *no* authority for her claim that "if the ALJ had checked 'marked' then [Plaintiff]

15

meets a listing." Doc. 12, at 10.

### 4. Plaintiff's physical RFC.

Here, Plaintiff maintains the ALJ's RFC assessment did not account for all of her physical impairments. *Id.* She does not, however, advise the court what limitations the ALJ omitted nor does she provide a supported argument to demonstrate that any such omission was improper.[8] *See supra* § III.B.1.a. Neither does she provide support – evidentiary or legal – for her suggestion that the ALJ improperly questioned the vocational expert. Doc. 12, at 10. And, as to those questions, Plaintiff raises a claim with regard to the ALJ's failure to ask the vocational expert about the use of her hands but does so for the first time in her reply brief. Doc. 14, at 6. This Court declines to consider issues raised in this manner. *See Montoya v. Apfel,* No. 99-2156, 2000 WL 556582, at *1 n.3 (10th Cir. May 8, 2000) (unpublished op.) (recognizing district court's refusal to consider an issue raised for the first time in a reply brief and holding the issue waived "because the issue was not before the district court").

### IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's decision be affirmed.

---

[8] Plaintiff does not appear to acknowledge that the ALJ found she had a severe physical impairment and a resulting limitation to work at no greater than the light exertional level. AR 28.

16

The parties are advised of their right to object to this Report and Recommendation by January 22, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 2nd day of January, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE